JOHN STUART LOOPER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12016–78.     Filed January 15, 1980.

John Stuart Looper, pro se.
*Frank W. Louis*, for the respondent.

### OPINION

NIMS, *Judge:* This matter comes to us on respondent's motion to dismiss this case for lack of jurisdiction on the grounds that the petition was filed after the expiration of the statutory 150-day response period and on petitioner's motion to dismiss for lack of jurisdiction on the ground that the notice of deficiency was sent to an improper address.

### I.

The facts in this case are not in dispute. Petitioner John Stuart Looper was a shareholder of JCAJ Investments, Inc., a Connecticut corporation engaged in the business of trading in commodity futures. In *JCAJ Investments, Inc. v. Commissioner,* T.C. Memo. 1979–34, this Court held that the corporation was liable for a deficiency in income tax for the fiscal year ending October 31, 1973, in the amount of $24,107.89 and for an addition

to the tax for the same period in the amount of $12,053.95, pursuant to section 6653(b), I.R.C. 1954.[1]

In the course of investigating the tax liability of JCAJ Investments, Inc., for the fiscal year ending October 31, 1973, and the tax liabilities of related taxpayers, the petitioner was interviewed by an agent of the Internal Revenue Service in London, England, in 1975. The product of that interview was a four-page affidavit written and typed by the agent, dated "8 May 1975" and signed by the petitioner. The affidavit stated that the petitioner was then a resident at Magdalen College, High Street, Oxford, England, having gone to England on August 29, 1974, to study French literature. The agent who interviewed petitioner was made aware of petitioner's home address at 2015 Silver Court East, Urbana, Ill., and his business address at 119–120 Bay Street Road, Boston, Mass.

Internal Revenue Service files maintained in connection with the investigation of the income tax liability of JCAJ Investments, Inc., for the fiscal year ending October 31, 1973, and the proposed transferee liability of the petitioner disclose no more recent communication with the petitioner than the May 8, 1975, affidavit. The files of JCAJ contained petitioner's Illinois and Boston addresses.

On May 15, 1978, the statutory notice of transferee liability was mailed to the petitioner at Magdalen College, High Street, Oxford, England, by registered mail. The notice was forwarded to petitioner's permanent address in Urbana, Ill., and then was delivered to him in Princeton, N.J., on or about September 25, 1978.

Upon receipt of the notice, petitioner took immediate steps to attempt to locate competent legal assistance at a moderate price, and, failing in these attempts, he wrote a letter to this Court, mailed on October 16, 1978, asking for an extension of the statutory period. This letter was deemed by this Court to be an imperfect petition in response to the statutory notice.

On December 4, 1978, respondent filed with this Court a motion to dismiss for lack of jurisdiction on the grounds that the petition was filed after the expiration of the statutory 150-day response period. On May 22, 1979, petitioner filed with this Court

---

[1]All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, except as otherwise expressly indicated.

a motion to dismiss for lack of jurisdiction on the grounds that the notice of liability was not sent to his last known address and that receipt of said notice 17 days prior to the expiration of the statutory 150-day response period did not constitute notice sufficient to allow him to file a petition in response to said notice.

These are the two motions upon which this Court is asked to rule. While it would at first seem that each party is seeking precisely the same result, i.e., dismissal on the grounds of lack of jurisdiction, the result of granting petitioner's motion would no doubt simply result in the issuance of a new deficiency notice by respondent, since fraud by the alleged transferor, JCAJ, is involved, whereas the granting of respondent's motion would result in the immediate assessment of the asserted liability against the petitioner.[2]

## II.

As a preliminary matter, and for reasons which become obvious below, we must decide whether petitioner had 90 days or 150 days within which to file the petition. Both petitioner and respondent assume that the 150-day period applies. Unfortunately, the answer is not quite that easy.

Section 6213(a) sets forth the time frame for filing a petition in this Court after a statutory notice has been mailed.[3] It provides, in pertinent part:

Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of

---

[2]Sec. 6901(c)(1) provides an additional 1-year period for assessing transferee liability in excess of the period for assessing the liability against the transferor. The 1 year is tacked on to the period in which the assessment against the transferor could have been made, not the period in which the assessment was actually made. *Field v. Commissioner*, 32 T.C. 187, 200 (1959), affd. 286 F.2d 960 (6th Cir. 1960), cert. denied 366 U.S. 949 (1961). Since the period of limitations for assessing a deficiency against the transferor here is indefinite because the transferor's liability was due to fraud (sec. 6501(c)(2)), the period for assessing transferee liability here is also indefinite. *Rowen v. Commissioner*, 18 T.C. 874, 880 (1952). See also *Morley v. Commissioner*, T.C. Memo. 1963-330; *Davis v. Commissioner*, T.C. Memo. 1964-244. This does not leave the Commissioner with an indefinite amount of time to act, however, because the Commissioner must comply with the period of limitations on the collection side, secs. 6901(a) and 6502, and the period for collection is measured from the actual date of assessment against the transferor. *Bartmer Automatic Self Service Laundry, Inc. v. Commissioner*, 35 T.C. 317, 322-323 (1960). The tolling provisions of sec. 6503 will facilitate the Commissioner's compliance with the collection statute.

[3]Although sec. 6213(a) is couched in terms of notice of deficiency, sec. 6901(a) indicates that it applies to a notice of transferee liability as well.

Columbia as the last day), the taxpayer may file a petition with the Tax Court for redetermination of the deficiency. * * *

The 150-day rule finds its origins in the Revenue Act of 1942, ch. 619, 56 Stat. 798. Prior to the 1942 Act, the time for filing the petition was the same regardless of the residential status of the petitioner. The 1942 Act added to section 272(a)(1), I.R.C. 1939, the following language: "If the notice is addressed to a person outside the States of the Union and the District of Columbia, the period specified in this paragraph shall be one hundred and fifty days in lieu of ninety days." (56 Stat. 876.)

In *Hamilton v. Commissioner*, 13 T.C. 747 (1949), we were first called upon to interpret this section. The liabilities of two separate individuals were involved. One had been a resident of England and France for a period extending 3 years before the notice of deficiency was mailed. The notice was mailed to a New York address which was that taxpayer's "last known address" and she filed her petition within the 150-day period but outside the 90-day period. We read section 272(a)(1) to provide the 150-day period for persons who were physically outside the United States at the time the statutory notice was mailed and we held that her petition was timely. That the notice of deficiency bore a New York address rather than a foreign address was not relevant to our analysis, since no claim was made by petitioner in *Hamilton* that the New York address was not the last known address.

The *Hamilton* rule has been followed in *Krueger v. Commissioner*, 33 T.C. 667 (1960), to permit an individual on a world cruise at the time the notice was mailed to take advantage of the 150-day period; in *Degill Corp. v. Commissioner*, 62 T.C. 292 (1974), to a Pennsylvania corporation all of whose activities took place abroad; in *Camous v. United States*, 67 T.C. 721 (1977), to both a husband and wife when only one of them was abroad; and in *Estate of Lombard v. Commissioner*, 66 T.C. 1 (1976), to the estate of a decedent, domiciled outside the United States at the time of her death, with an executor in a foreign country and an administrator in this country.

While these decisions were sometimes justified on the technical ground that the word "outside," in the section 6213(a) clause "if the notice of deficiency is addressed to a person outside the United States," modifies "person" rather than "addressed," the Court has rejected a "mechanical approach in favor of an

interpretation more consonant with the desires of its framers." *Lewy v. Commissioner*, 68 T.C. 779, 782 (1977). Thus, in *Cowan v. Commissioner*, 54 T.C. 647 (1970), where the taxpayer had been visiting Mexico from 9 a.m. until 7:30 p.m. on the day the notice of deficiency was mailed at 3 p.m., we rejected the taxpayer's argument that his ephemeral presence abroad at the time the notice was mailed entitled him to 150 days to file. Similarly, in *Lewy v. Commissioner, supra,* the taxpayer was a resident of France who happened to be in the United States on the day the notice was mailed but left for France the following day and was gone for almost 3 months. We held that he was entitled to the 150-day period.

The common element running through these cases is a recognition that the receipt of mail is often delayed when it travels abroad. In *Degill v. Commissioner*, 62 T.C. 292, 299 (1974), we cited the following language as the persuasive reason for our decision:

> As we see it, the crucial criterion to be gleaned from the decided cases is whether the "person" is physically located outside the United States so that the notice of deficiency mailed to its United States address will be delayed in reaching it in a foreign country, possession, or territory, and thereby hamper its ability to adequately respond by filing a petition to litigate its case in this Court. * * *

See also *Lewy v. Commissioner*, 68 T.C. at 783.

Language in these opinions suggests that the 150-day rule applies only in cases where the taxpayer is out of the United States and not in cases where the address is a foreign address, but that language is dicta. Such a reading of the statute would be unduly restrictive. The literal terms of the statute can support a reading that the 150-day rule applies either when the taxpayer is out of the country or when the address on the notice is a foreign address and the legislative history is such that it does not foreclose either construction.[4]

---

[4]The legislative history was described in *Hamilton v. Commissioner*, 13 T.C. 747, 750–751 (1949), as follows:

"The 150-day provision added at the end of section 272(a)(1) first appeared when the Revenue Bill of 1942 was reported to the Senate by its Committee on Finance, and was explained in the committee report as follows:

"'Under existing law if a notice of deficiency in income tax is mailed to a taxpayer he has 90 days within which to file his petition with the Board of Tax Appeals. In the case of a taxpayer in remote places, such as Hawaii or Alaska, this time limit may possibly work a hardship because of delays in transporting mail that may occur during the present hostilities. To correct this hardship section

Moreover, it is clear that a notice of deficiency addressed to a foreign address can suffer a fate similar to a notice of deficiency directed to a person residing in a foreign country. No better illustration can be found than in the instant case where the notice traversed the Atlantic Ocean, round trip, by ship as it wended its way in pursuit of the petitioner from one forwarding address to another.

Indeed, a plain reading of the statute may lead one to conclude that the address on the notice is the only focal point of section 6213(a). The Commissioner and petitioner in this case are not alone in reaching that conclusion. One of the leading tax services, put out by the Tax Research Institute of America, Inc., states the rule as follows: "If the 90-day letter is *addressed* to a taxpayer outside the U.S. and the District of Columbia, the period is 150 days instead of 90 days." (*Federal Tax Coordinator* 2d, T–3001 (RIA 1979); emphasis in original.) If the address is without significance, as dicta in earlier opinions would have it, the section could have been worded much more succinctly to the effect that "Within 90 days, or 150 days if the taxpayer is outside the United States."

Congress has afforded taxpayers a prepayment forum—this Court—in which to contest the Commissioner's asserted deficiency. Consonant therewith, the jurisdiction provisions of the Code have been read in a manner which facilitates rather than impedes access to the Tax Court forum. In this context, we view section 6213(a) as a congressional effort to protect taxpayers such as petitioner for whom the foreign mails are a necessary instrument for gaining access to the Tax Court. And although the language of section 6213(a) may be ambiguous, we hold that it should be read to provide this petitioner 150 days within which to file a petition because the notice of deficiency was addressed to him at a foreign address.[5]

This decision is not meant to undercut the validity of our

272(a)(1) of the Code has been amended to increase the period to 150 days if the notice is mailed to a person outside the States of the Union and the District of Columbia. This extension applies only to deficiency notices mailed after the date of enactment of the act. [Senate Finance Committee Report No. 1631, Seventy-seventh Congress, second session, p. 154.]'

"As the result of a conference on the bill, the House receded and accepted the Senate amendment without explanation other than a statement in the conference report of the substance of the sentence added.

[5]The scope of the 150-day rule is not endless. For example, the 150-day rule does not apply if the taxpayer is located in the United States merely because the Commissioner mails duplicate original notices, one of which contains a foreign address. See *Lawton v. United States*, T.C. Memo. 1979–203.

earlier decisions holding that the 150-day period applies to persons outside the United States even if the "last known address" is a United States address. We accept and must live with the literal incongruity this decision creates in having "foreign" modify both "address" and "person."

## III.

The focal point of dispute is whether it was reasonable for respondent to mail the notice of deficiency to the Oxford, England, address. The context is somewhat atypical. Often respondent defends his use of an old address by arguing that petitioner did not furnish adequate notice of a new address. In this case, however, respondent relied upon what he perceived to be notification from petitioner of a change in address and mailed the notice to that new address.

Respondent contends that the address was petitioner's "last known address" within the purview of section 6901(g)[6] because it was given by the petitioner to the respondent in a May 8, 1975, affidavit which was the last written communication with petitioner prior to the issuance of the notice of liability.

Petitioner claims that the so-called new address was just a temporary college address and further that the agent who interviewed him was cognizant of that fact and had been apprised of his permanent address.

A taxpayer's "last known address" is that address to which, in light of all the facts and circumstances, the respondent reasonably believed the taxpayer wished the notice to be sent. *Delman v. Commissioner*, 384 F.2d 929, 932 (3d Cir. 1967); *Lifter v. Commissioner*, 59 T.C. 818, 821 (1973). Taxpayers are required to send a clear and concise notification directing respondent to use a different address to be assured of effecting a change in the "last known address." *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374–375 (1974), and cases collected therein. If the notice is properly mailed to the "last known address," respondent has done all the law requires; it is then irrelevant that petitioner did not receive the notice in time to file a petition in this Court within the 90-day (or 150-day) period prescribed by

---

[6]Most of the "last known address" cases involve notices of deficiency rather than notices of transferee liability. The notice of deficiency analog to sec. 6901(g) is sec. 6212(b). Regardless of which section is at issue in a particular case, there is no analytical difference.

section 6213. Sec. 6212(b)(1); *Delman v. Commissioner, supra* at 933; *Lifter v. Commissioner, supra* at 823.

In the instant case, petitioner gave respondent no clear and concise notification that his address had changed for any period of time other than a temporary one, much less notification that he wanted mail from the Commissioner to be sent to the new address. Although the affidavit indicated that the petitioner resided at a new address at the time of the interview, the affidavit also highlighted petitioner's student status at Oxford. This type of college address is usually a temporary address. Without a clear expression of intent by the taxpayer that such an address should be used in lieu of other addresses, it is unreasonable for the Commissioner to conclude that the taxpayer has a new "last known address." The mere fact that one of Commissioner's agents manages to catch up with the taxpayer at his college and secure an affidavit listing the college address does not suffice as a clear expression of the requisite intent.

Accordingly, we find that the notice of liability in the instant case was not mailed to petitioner's "last known address" within the purview of section 6212(b) and we also find that it was unreasonable for respondent to have used the Oxford, England, address.

## IV.

Petitioner would have the case be resolved on the "last known address" issue. Respondent disagrees, offering the additional argument that petitioner received the notice within sufficient time to file a timely petition and thus the purpose of section 6901(g) has been served. Respondent's argument is predicated on a line of cases in which an error in the "last known address" was deemed to be a harmless error.

Although some cases can be read to suggest that a notice of deficiency sent to other than a taxpayer's "last known address" cannot qualify as a proper statutory notice for purposes of conferring jurisdiction on the Court (see *Heaberlin v. Commissioner*, 34 T.C. 58, 59 (1960), and *Carbone v. Commissioner*, 8 T.C. 207, 212 (1947)), it is now well settled that a notice of deficiency is valid even though there are errors in the mailing address when the "taxpayer receives notice within ample time to file a timely petition." *Brzezinski v. Commissioner*, 23 T.C. 192, 195 (1954). As we stated in *Brzezinski:*

It is true that section 272(k) provides that the notice is sufficient where mailed to the "last known address" even if the "taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence." This has been construed to mean that a notice sent to the "last known address" is sufficient even though the taxpayer has moved and does not receive notice of the deficiency until after the time has expired for filing a petition. *Joseph Marcus*, 12 T.C. 1071. See also *Abraham Goldstein*, 22 T.C. 1233. But while section 272(k) might imply that, in the situations specified therein, notice sent to other than the "last known address" is not sufficient (cf. *Botany Worsted Mills v. United States*, 278 U.S. 282), it does not imply that notice sent to a non-incapacitated taxpayer at other than his "last known address" which is received by him "in due course" does not satisfy the statutory requirements. Cf. *Dilks v. Blair*, (C.A. 7) 23 F.2d 831. Congress was primarily concerned with giving the taxpayer notice within ample time to file a timely petition. When, as here, a timely petition was filed, it is obvious that sufficient notice was received. The problem is different if the wrong address results in a delay in the receipt of the notice, and a timely petition is not filed. *Henry M. Day*, 12 B.T.A. 161. But that is not the instant case. Here, the taxpayer received sufficient notice, thereby satisfying the underlying purpose of section 272(a), and there was literal compliance with the terms of the statute. Therefore, the requirements of section 272(a) are satisfied, and this Court does not lack jurisdiction. *Bert D. Parker; Rite Way Products, Inc.; Daniel Thew Wright*, all *supra*. [23 T.C. at 195.]

See also *Zaun v. Commissioner*, 62 T.C. 278 (1974); *Lifter v. Commissioner, supra*.

Respondent points to the fact that petitioner received the notice 17 days before the 150-day period expired as evidence that petitioner was not prejudiced by the incorrect mailing address. Respondent suggests that the 17-day period was more than enough time for petitioner to file a petition with this Court.

Petitioner argues that the error was not a harmless error because the petition was not filed timely for what petitioner considers to be good cause, and he points out that the only cases where an error in last known address has been overlooked are those where the taxpayer subsequently filed a timely petition.

Petitioner is correct in his observation that in each of the cited cases in which the Court found jurisdiction even though the notice was addressed to the wrong "last known address" the taxpayer filed a petition within 90 days (or 150 days as the case may be) of the mailing date of the notice. However, the conclusion that petitioner draws from that phenomenon—that the Court cannot deem a "last known address" error to be a harmless error unless a timely petition is filed—invokes a reading of these cases that is too restrictive.

The question of whether a taxpayer has been prejudiced by an improperly addressed notice is factual in nature. True, a taxpayer's failure to file a timely petition bears heavily on our analysis, but it is only one of a number of factors. In the instant case, petitioner received the notice with 17 days left to file a petition. We find that petitioner did not let the notice languish but that he took responsible steps in an attempt to fulfill requisites to contest the Commissioner's determination in the Tax Court. It is also significant that the notice did not concern either his personal tax liability or the liability of an entity with which he had any close degree of association at the time he received the notice. Thus, the transferee notice was not necessarily something that he expected, nor was it a document the legal implications of which he could readily understand. Based on these facts, we find that the petitioner was prejudiced by the Commissioner's failure to send the notice of deficiency to the appropriate address and we reject respondent's argument that the error in mailing address was mere "harmless error."[7]

We thus conclude that the notice of transferee liability was a nullity and invalid and it did not serve to give this Court jurisdiction in this case. Accordingly, petitioner's motion for dismissal will be granted and respondent's motion for dismissal will be denied.[8]

To reflect the foregoing,

*An appropriate order will be issued.*

---

[7] A case where the Commissioner sends a notice to a wrong address but the Post Office immediately forwards the notice is one where the Court might conclude that the notice was valid even if the petition was not filed timely. See also *Grubart v. Commissioner*, T.C. Memo. 1979–409, where the notice may have been mailed to the wrong apartment number in a building, and we held the possible error, if shown, would have been harmless error despite the taxpayer's failure to file a timely petition. Where the line should be drawn between the instant case and these two examples we leave to another day.

[8] This Court has jurisdiction and authority to determine that a notice of deficiency is invalid and to grant petitioner's motion to dismiss even if the petition was filed outside the 90-day (or 150-day) response period. See *O'Brien v. Commissioner*, 62 T.C. 543, 548 (1974); *Shelton v. Commissioner*, 63 T.C. 193 (1974).